```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
DIANE F. DELYANIS,                  :
                                    :   Docket No. 05 5505
                Plaintiff,          :
                                    :   SPATT, J.
        -against-                   :
                                    :
DYNA-EMPIRE, INC.,                  :
JIM SPAGNOLO, PAT McCARTHY,         :   COMPLAINT
REGINA B. WELLER, Officially        :
and Individually,                   :
JOHN DOES 1 - 100, Individuals      :   Plaintiff Demands
whose identities are currently      :   Trial by Jury
unknown,                            :
                                    :
                Defendants.         :
_____ :
```

FILED IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 2 3 2005 ★
BROOKLYN OFFICE

BOYLE, M.J.

Plaintiff, **DIANE F. DELYANIS**, by and through her attorneys, WEITZ & LUXENBERG, P.C., states that at all relevant times hereinafter mentioned:

**PARTIES**

1.  Plaintiff, **DIANE F. DELYANIS**, resides at 2543 7th Avenue, East Meadow, New York 11554 and was a longtime employee of defendant Dyna-Empire, Inc.

2.      The Defendant, **DYNA-EMPIRE, INC.**, is a domestic corporation in the business of manufacturing marine and aerospace equipment and is responsible for providing equal employment opportunities for all persons and is located at 1075 Stewart Avenue, Garden City, NY, 11530.

3.      Defendant, **JIM SPAGNOLO**, is the Comptroller, who at all times relevant to this action, was Ms. Delyanis' supervisor at Dyna-Empire, Inc.  He is sued in his official capacity and individually.

4.      Defendant, **PAT McCARTHY**, is the CEO, who was the individual who was ultimately responsible for terminating Ms. Delaynis' employment with Dyna-Empire, Inc. and was responsible for hiring two replacements who were under the age of 40.  He is sued in his official capacity and individually.

5.      Defendant, **REGINA WELLER**, is the Manager of Human Resources who at all times relevant to Ms. Delyanis' tort claims harassed her and contributed to creating a hostile work environment.  She is being sued individually and in her official capacity.

**VENUE AND JURISDICTION**

6. The jurisdiction of this Court is invoked pursuant to the provisions of 28 *U.S.C.* § 1331, this being a suit to recover equitable relief, compensatory damages, punitive damages, and attorney's fees and costs, for defendants' violations of the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 *U.S.C.* § 2000(e) *et. seq.*(hereinafter "Title VII"), and New York common law.

7. This Court has original jurisdiction over actions brought under 42 *U.S.C.* § 2000 et seq. This court has supplemental jurisdiction pursuant to over all State of New York causes of action under 28 *U.S.C.* § 1367.

8. With respect to plaintiff's Title VII and New York State Human Rights claims, Plaintiff duly filed an administrative complaint with the Equal Employment Opportunity Commission of the United States (EEOC) under 42 *U.S.C.* § 2000 *et. seq.* and the New York Division of Human Rights (NYDHR) on August 17th, 2004.

9. On or about September 3, 2004, the Plaintiff received a communication from NYDHR that advised that the

Agency would conduct the processing of the Plaintiff's Federal and State law claims, and advise EEOC of its findings.

10. On or about May 19, 2005, the matter was submitted for a fact finding arbitration before the NYDHR. On October 25, 2005, New York State Division of Human Rights issued a "Determination After Investigation," finding that there is PROBABLE CAUSE to believe that Dyna-Empire, Inc was engaged in or is engaging in discriminatory conduct."

11. On or about September 9, 2005, Plaintiff requested a Right to Sue Letter, because the NYDHR had not yet issued a decision. Plaintiff was issued her Right to Sue Notice on September 9, 2005.

12. A substantial part of the events or omissions giving rise to the claim occurred within this judicial district. This action is properly venued in this court pursuant to 28 U.S.C. § 1391 (b)(2).

## BACKGROUND FACTUAL ALLEGATIONS

13.  Ms. Delyanis interviewed for and was offered a position as Receptionist at Dyna-Empire, Inc. on December 12, 1999.

14.  In or around 2002 plaintiff received a significant promotion to Accounts Payable Department less than two years after joining the company, and was always given additional out of title responsibilities which she performed without complaint.

15.  After assuming the Accounts Payable position, Ms. Delyanis demonstrated extreme diligence in this position, ascertaining a number of accounting and collection errors, saving the company in excess of $21,000.00 which she reported to her supervisor, Jim Spagnolo, the Comptroller.

16.  At the time those accounting errors were made, the Accounts Payable Department was managed by Jim Spagnolo who was exhibiting signs of drunkenness and general incompetence on the job.  Ms. Delyanis observed Mr. Spagnolo coming to the office with the smell of alcohol on his breath, verbally abusing the other employees, and falling asleep at his desk.

17.     In or around February 2002, approximately a month after assuming her new position in Accounts Payable, Ms. Delyanis discovered several accounting errors that had been made prior to her assuming this position, including an overpayment to the Robert E. Morris Company in the amount of $13,000.00, and unpaid and uncollected debts in the amount of $8,000.00.  These accounting errors were reported to Mr. Spagnolo.  It was shortly thereafter that Ms. Delyanis observed Jim Spagnolo, the Comptroller or head of the Accounts Payable Department appearing to work visibly drunk.

18.     Ms. Delyanis reported Mr. Spagnolo's drunkenness to Syd Crossley.  Mr. Crossley responded to Ms. Delyanis by stating that it was mouthwash and not alcohol that she smelled on his breath.  Approximately three months later, it became common knowledge within the company that Mr. Spagnolo had left the company on short term disability to enter an alcohol rehabilitation program.

19.     Mr. Spagnolo had subjected Ms. Delyanis to a number of humiliating and hostile situations prior to and following his leave to enter treatment.

20.  In or around the Summer of 2003, after reporting Mr. Spagnolo for drunkenness on the job, she found internet printouts of job listings and harassing internet articles on her desk.

21.  In 2003, Ms. Delyanis was performing the workload for two positions while only being paid for one position. She was the individual responsible for all of Accounts Payable and was also given additional responsibilities in the Document Control Department where she was responsible for copying, filing, organization of blueprints.

22.  On or about April 9, 2004, Ms. Delyanis was involved in a car accident, sustaining serious bodily injuries to her head and chest. On April 12, 2004, Mr. James Delyanis, Ms. Delyanis' husband contacted Dyna-Empire, Inc. to notify his wife's employer that his wife, Ms. Delyanis, had been involved in a car accident. Moreover, Ms. Delyanis submitted all of the appropriate medical documentation during the course of her short-term disability.

23.  Prior to the motor vehicle accident, Ms. Delyanis' time and attendance was always satisfactory.

24. The following week, Ms. Delyanis phoned her supervisor, Jim Spagnolo, and provided him with an update regarding her condition. After Ms. Delyanis told Mr. Spagnolo about her condition, Mr. Spagnolo stated the following: "it's a blessing that you're not here."

25. Ms. Delaynis was extremely upset after Mr. Spagnolo's comment and she phoned the Director of Operations, Syd Crossley, to tell him about her accident and about Mr. Spagnolo's comment.

26. Crossley then told Ms. Delyanis not to phone Mr. Spagnolo from now on and to direct all her communications to him. He also indicated that Ms. Delyanis' position was secure and that she should focus on getting well.

27. In or around the second week of June 2004, Ms. Delyanis phoned Mr. Crossley and told him that the MRI of her neck revealed a spot on her left lung. During that telephone call, Ms. Delyanis told Mr. Crossley that she was extremely upset about the MRI results and that she was concerned about the possibility of lung cancer because she had been a heavy smoker for a great deal of her life.

28.     Ms. Delyanis continued to keep Dyna-Empire apprised of her condition two to three times a month until July 2004 when she received clearance to return to work. Ms. Delyanis was officially cleared by her physician to return to her original job functions on July 14, 2004. During a telephone call occurring on July 12, 2004, Mr. Crossley indicated that it may be better for her to return at the beginning of the week on a Monday and suggested she return on July 19, 2004 instead of on July 14, which would have been a Wednesday. Ms. Delyanis agreed to a July 19, 2004 return date.

29.     On July 14, 2004, Pat McCarthy, CEO of Dyna-Empire, Inc. telephoned Ms. Delyanis and asked her if she was intending on returning on July 19, 2004, to which Ms. Delyanis indicated that she would. Mr. McCarthy then asked Ms. Delyanis the following: "What would you say if I told you that you weren't going to be returning on 19th?" Ms. Delyanis was shocked and surprised by Mr. McCarthy's telephone call because she had just secured a return date two days earlier.

30. On the evening of July 14, 2004, Ms. Delyanis reached out to Syd Crossley to inquire why she had been fired. Mr. Crossley indicated that he didn't know why and that he was surprised by the turn of events.

31. Defendants admit that the two individuals they hired to fill Ms. Delyanis' position in her absence were twenty-seven and twenty-nine years old. Defendant indicated that these two individuals were hired to replace Ms. Delyanis during her disability leave.

32. On July 12, 2004, Ms. Delyanis informed Mr. Crossley and Mr. Crossley agreed that Ms. Delyanis could and would resume her previous responsibilities and title on July 19, 2004, providing Mr. Crossley with ample time to release the temporary hires. At no time did Mr. Crossley or Dyna-Empire ever indicate that Ms. Delyanis' position was in jeopardy.

33. At no time prior to July 14, 2004 did Dyna-Empire provide Ms. Delyanis with any formal notice that her position was being eliminated or that her job would not be available upon her return. Moreover, Ms. Delyanis has not been issued a formal notice of termination or separation letter to date.

34.     After Dyna-Empire, Inc. informed Ms. Delyanis that her position was being eliminated, she saw a newspaper listing for a part-time position in the Accounts Payable Department in the local paper.  This part-time position was never offered to plaintiff.

35.     Additionally, Ms. Delyanis requested a recommendation letter from Dyna-Empire when she began to seek new employment after her termination.  The recommendation letter that Dyna-Empire issued to her demonstrates a continued pattern of discrimination against Ms. Delyanis for her disability and in retaliation for taking approved leave by mentioning her disability-leave and auto accident in the letter.

36.     Subsequent to the termination of the 56 year-old plaintiff two younger individuals, ages twenty-seven and twenty-nine, were hired to replace plaintiff and to perform the same duties and functions performed by the plaintiff.

**FIRST CAUSE OF ACTION**
**VIOLATION OF ADEA – AGE DISCRIMINATION**

37.     During the course of her employment, Defendants' subjected Ms. Delyanis to unlawful discrimination based on

her age in violation of ADEA, including but not limited to her termination from said employment.

38. As a result of defendants' unlawful conduct, Ms. Delyanis suffered severe economic loss and job detriment.

39. Also as a result of defendants' unlawful conduct, Ms. Delyanis suffered extreme emotional distress, anxiety, embarrassment and humiliation.

40. By reason of the aforesaid, plaintiff demands a judgment for compensatory damages, punitive damages, attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF NY LABOR LAW

41. Plaintiff repleads and restates all of the allegations contained in the preceding Paragraphs "1" through "40" as if stated at length herein.

42. As a result of Ms. Delyanis' protected conduct in reporting her supervisor for drunkenness on the job, exhibiting signs of abuse and recklessness to co-workers, and not catching multiple accounting errors that were made

under Mr. Spagnolo's authority, defendant retaliated against Ms. Delyanis in violation of NY Labor Law § 740(2).

43. Despite Ms. Delyanis' exemplary job performance, she suffered adverse employment actions from her employer and was treated less favorably than similarly situated employees who did not engage in statutorily protected activities.

44. Ms. Delyanis was subjected to continued discriminatory treatment or a pattern of antagonism from her supervisor, Mr. Jim Spagnolo after she reported him for exhibiting signs of drunkenness on the job.

45. As a result of defendants' unlawful conduct, Ms. Delyanis suffered severe economic loss and job detriment.

46. Also as a result of defendants' unlawful conduct, Ms. Delyanis suffered extreme emotional distress, nightmares, depression, stress, anxiety, loss of appetite, humiliation and embarrassment.

47. By reason of the aforesaid, plaintiff demands a judgment for compensatory damages, punitive damages, attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FMLA

48.     Plaintiff repleads and restates all of the allegations contained in the preceding Paragraphs "1" through "47" as if stated at length herein.

49.     Plaintiff is entitled to protections of the FMLA as prescribed in 29 U.S.C. §§2601, et seq., and the U.S. Department of Labor's (DOL) regulations, 29 C.F.R. Part 825.

50.     Plaintiff was an employee who had a serious health condition rendering her unable to perform her job functions for a period of time.

51.     Ms. Delyanis was entitled to reinstatement of her position on July 14, 2005, and was able to return to her original job functions on that date.

52.     As a result of Ms. Delyanis's protected conduct Ms. Delyanis was not afforded her rights under the FMLA and was unlawfully discharged.

53.     As a result of defendants' unlawful conduct, Ms. Delyanis suffered severe economic loss and job detriment.

54.     As a result of defendants' unlawful conduct, Ms. Delyanis suffered extreme emotional distress, anxiety, embarrassment and humiliation.

55. By reason of the aforesaid, plaintiff demands a judgment for compensatory damages, punitive damages, attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE FMLA

56. Plaintiff repleads and restates all of the allegations contained in the preceding Paragraphs "1" through "55" as if stated at length herein.

57. The FMLA provides that it is unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Under 29 U.S.C. §2615, 2601.

58. Ms. Delyanis was engaged in a statutorily protected medical leave after her motor vehicle accident.

59. That exercise of her leave was known by her employer, Dyna-Empire, Inc.

60. Ms. Delyanis was terminated for exercising her rights under the FMLA in retaliation for taking that leave.

61. Defendant Dyna-Empire, Inc. did not restore Ms. Delyanis to her same or an equivalent position. 29 U.S.C. §2614(a). Ms. Delyanis maintained the right to reinstatement even if Dyna-Empire had replaced her position or the position had been restructured to accommodate the employee's absence. 29 C.F.R. §825.214(a).

62. As a result of defendants' unlawful conduct, Ms. Delyanis suffered severe economic loss and job detriment.

63. As a result of defendants' unlawful conduct, Ms. Delyanis suffered extreme emotional distress, anxiety, embarrassment and humiliation.

64. By reason of the aforesaid, plaintiff demands a judgment for compensatory damages, punitive damages, attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

### FIFTH CAUSE OF ACTION
### VIOLATION OF ADA

65. Plaintiff repleads and restates all of the allegations contained in the preceding Paragraphs "1" through "64" as if stated at length herein.

66. Ms. Delaynis was involved in a motor vehicle accident which led to a period of approved unpaid medical leave from her employer Defendant Dyna-Empire, Inc.

67. Ms. Delaynis had notified her employer that she had been involved in a motor vehicle accident and her concern that the spot that showed up in her back and neck MRI could be cancer. Moreover, she kept her employer updated on the progress of her condition on a regular basis.

68. At no time did defendant, Dyna-Empire, Inc. tell Ms. Delyanis that her position was in jeopardy or that she would not be welcome to return after returning from her leave.

69. Ms. Delyanis informed Dyna-Empire that the period of her leave would be finite and that she had every intention of returning.

70. As a result of defendants' unlawful conduct, Ms. Delyanis suffered severe economic loss and job detriment.

71. As a result of defendants' unlawful conduct, Ms. Delyanis suffered extreme emotional distress, anxiety, embarrassment and humiliation.

72. By reason of the aforesaid, plaintiff demands a judgment for compensatory damages, punitive damages,

attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

### SIXTH CAUSE OF ACTION
### INTERNATIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff repleads and restates all of the allegations contained in the preceding Paragraphs "1" through "72" as if stated at length herein.

74. The defendants', in committing an assault and battery upon the plaintiff, Ms. Delyanis, negligently, intentionally and maliciously inflicted severe emotional distress on Ms. Delyanis, in violation of New York common law by creating a hostile work environment for her and for terminating her for illegal discriminatory reasons.

75. Said conduct was beyond all standards of common decency and was wanton, reckless and malicious for which plaintiff is entitled to punitive damages.

76. As a result of defendants' unlawful conduct, Ms. Delyanis suffered permanent physical harm, extreme emotional distress, severe depression, anxiety, embarrassment and humiliation.

**WHEREFORE**, by reason of the aforesaid plaintiff demands a judgment in favor of plaintiff for compensatory damages, punitive damages, attorneys fees, costs and expenses of suit, and any and all other relief that the Court finds just and equitable under the circumstances.

Dated:   November 23, 2005
         New York, New York

_____
Gary Klein, Esq. (GK-5632)
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY 10038
(212) 558-5500
Attorneys for Plaintiff