UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                           :

DIANE F. DELYANIS                      :

        Plaintiff,                  :

       v.                      :  Case No. 05-cv-5505 (ADS)

DYNA-EMPIRE, INC., JIM SPAGNOLO, PAT  :
MCCARTHY,  and  REGINA  B.  WELLER,  :
Officially and Individually,           :

        Defendants.           :

------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.
485 MADISON AVENUE
NEW YORK, NEW YORK 10022

ATTORNEYS FOR DEFENDANTS DYNA-EMPIRE, INC., JIM
SPAGNOLO, PAT MCCARTHY AND REGINA B. WELLER

00078773;1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Once Entered Into, a Settlement is
            a Binding Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The Parties Reached Agreement
            Regarding the Settlement of this Matter . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

Page

**Cases**

Digital Equipment Corp. v. Desktop Direct, Inc.,
  114 S. Ct. 1992, 511 U.S. 863
  (U.S. Utah June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Interspace Incorp. v. Morris,
  650 F. Supp. 107 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Janneh v. GAF Corp.,
  887 F.2d 432 (2d Cir. 1989), *cert. denied*,
  111 S. Ct. 177 (1990), *subsequently abrogated*
  *on other grounds by* Digital Equipment Corp.
  v. Desktop Direct, Inc., 114 S. Ct. 1992, 511
  U.S. 863 (U.S. Utah June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Kohl Indus. Park Co. v. County of Rockland,
  710 F.2d 895 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Little v. Greyhound Lines, Inc.,
  2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 10

Loewenson v. London Market Companies,
  351 F.3d 58 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Meetings & Expositions, Inc. v. Tandy Corp.,
  490 F.2d 714 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

New York State Electric & Gas Corp. v. Saranac Power Partners, L.P.,
  117 F. Supp. 2d 211 (N.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rispler v. Sol Spitz Co., Inc.,
  418 F. Supp. 2d 82 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. v. Bank of New York,
  14 F.3d 756 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

**Statutes**

Eastern District of New York Local Rule 83.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 8, 9

## PRELIMINARY STATEMENT

Defendants Dyna-Empire, Inc., Jim Spagnolo, Pat McCarthy and Regina B. Weller, (collectively, "Defendants") through their counsel, Klein, Zelman, Rothermel & Dichter, L.L.P., respectfully submit this memorandum of law in support of their motion to enforce the settlement agreement reached during a May 19, 2006 court-ordered mediation with Plaintiff Diane E. Delyanis ("Plaintiff").  Approximately a week after the mediation, after Plaintiff's counsel had repeatedly confirmed that agreement had been reached, Plaintiff appears to have learned that her attorney incorrectly advised that most of the settlement payment was not subject to income tax.  Since Plaintiff learned differently, she has been trying to renounce the agreement.

While Plaintiff may have the right to seek a remedy elsewhere, she cannot renounce her agreement with Defendants.  Defendants request this Court to enforce the settlement agreement reached with Plaintiff.

## STATEMENT OF FACTS

On or about November 23, 2005, Plaintiff filed a complaint alleging various federal, state and local causes of action arising from her employment with Defendant Dyna Empire, Inc.  (Affirmation of Khristan A. Heagle, Esq. ("Heagle Affirm.") ¶ 3)  At all relevant times, Plaintiff was represented by Hannah Lim, Esq. of the law firm of Weitz & Luxemberg ("Attorney Lim").  (Heagle Affirm. ¶ 4)  As an attorney in good standing in the State of New Jersey, Attorney Lim was admitted *pro hac vice* in this matter.  (Heagle Affirm.

¶ 4)  She has been a member of the New Jersey Bar since 1998 and practices employment law.  (Heagle Affirm. ¶ 4)

On or about April 24, 2006, this Court referred this matter to mediation pursuant to Eastern District of New York Local Rule ("E.D.N.Y. R.") 83.11.  (Heagle Affirm. ¶ 5) Pursuant to the Court's Order, the parties selected mediator A. Jonathan Trafimow, Esq. of the law firm of Epstein, Becker & Green, P.C., from the Court's panel of mediators. (Heagle Affirm. ¶ 5)  The mediation was held on Friday, May 19, 2006.  (Heagle Affirm. ¶ 5)  Plaintiff attended the mediation with her husband and her counsel, Attorney Lim. (Heagle Affirm. ¶ 6)

The parties negotiated with each other and caucused with the mediator in separate rooms for most of the day.  (Heagle Affirm. ¶ 7)  By the end of the day, an agreement was reached between the parties.  (Heagle Affirm. ¶ 7)  The mediator brought the parties and their respective counsel back together in the same room and reduced the agreement to a writing entitled "Agreement to Settle."  (Heagle Affirm. ¶ 8)

The Agreement to Settle specifically states:

> While not intended to be a legally enforceable settlement agreement, the parties have agreed to resolve the case of Delyanis v. Dyna-Empire, Inc. et al. pursuant to the following terms.
>
> Defendant Dyna-Empire, Inc. will pay Plaintiff $67,500.00, in the following manner, and without any representation to Plaintiff as to what is or is not taxable:
>
> • $5,000.00 on a W-2, with applicable withholdings, as back pay, payable to Plaintiff;

- 1) $20,000.00 payable on a Form 1099, to Plaintiff's counsel, Weitz & Luxemberg, P.C., for attorney's fees; and
- 2) $42,500.00 payable to Plaintiff on a Form 1099 for compensatory damages.
- Plaintiff agrees to execute a settlement agreement, drafted by Defendants, the essential terms of which include:
  - ▸ settlement of the action, and a full release for all Defendants named and unnamed;
  - ▸ confidentiality;
  - ▸ indemnification for tax liability in connection with this settlement;
  - ▸ no admission of liability;
  - ▸ nondisclosure and agreement to notify defendants' counsel if subpoenaed.

(Heagle Affirm. ¶ 9)

Plaintiff and her counsel were present in the room during the entire discussion regarding the core terms of the Agreement to Settle.  (Heagle Affirm. ¶ 10)  Although Plaintiff asked Attorney Lim for clarification on some of the terms discussed, at no time did Plaintiff object to the core terms or otherwise indicate that she did not agree with the terms of the Agreement to Settle.  (Heagle Affirm. ¶ 10)  When completed, counsel and the parties reviewed the written Agreement to Settle.  (Heagle Affirm. ¶ 11)  The parties, counsel and the mediator then signed the Agreement to Settle and copies of the document were given to both counsel.  (Heagle Affirm. ¶ 11)

On Monday, May 22, 2006, the mediator emailed counsel for the parties and asked whether he could report the case as settled to Gerald Lepp, Esq., ADR Administrator for the Brooklyn Office of the District Court for the Eastern District of New York, "subject to the parties completing final documentation."  (Heagle Affirm. ¶ 12)  Attorney Lim

responded, "Yes, thank you so much for your assistance.  (Heagle Affirm. ¶ 12)  I sent [Defendants' counsel] an e-mail earlier today and am waiting for a proposed copy of the settlement agreement."  (Heagle Affirm. ¶ 12)  A copy of the email is attached hereto as Exhibit A.  (Heagle Affirm. ¶ 12)  Later that same day, Defendants' counsel forwarded to Attorney Lim a full Agreement and Release, incorporating the terms of the Agreement to Settle.  (Heagle Affirm. ¶ 13)

On May 25, 2006, Attorney Lim and Defendants' counsel conferenced regarding the Agreement and Release.  (Heagle Affirm. ¶ 14)  Attorney Lim requested the following changes:  (1) an explicit designation in the Agreement and Release that the $42,500.00 payment to Plaintiff's claims for emotional distress damages; (2) deletion of the paragraph in which Plaintiff agreed to indemnify Defendants for tax liability in connection with the settlement (which Plaintiff expressly agreed to in the Agreement to Settle; in addition, in the Agreement to Settle, Defendants expressly agreed to pay the amount to Plaintiff "without any representation to Plaintiff as to what is or is not taxable"); (3) a revision to the release language such that Plaintiff would release only "known" claims and not unknown claims up through the date of the execution of the Agreement; and (4) deletion of language requiring Plaintiff to return the settlement monies in the event that she breached the agreement.  (Heagle Affirm. ¶ 14)

In an effort to resolve the issues raised by Plaintiff, by letter to Plaintiff's counsel dated May 25, 2006, Defendants agreed: (1) to designate the $42,500.00 payment to

00078773;1                                    4

Plaintiff's claims for emotional distress damages; (2) to incorporate the Agreement to Settle language such that Plaintiff would provide a "full release for all defendants named and unnamed" (notwithstanding Defendants' position that "full release" included both known and unknown claims); and (3) to delete the language requiring Plaintiff to return the settlement monies in the event that she breached the agreement, but with additional language that Defendants could pursue any and all legal remedies they may have against Plaintiff for a breach, including a return of monies paid pursuant to the Agreement. (Heagle Affirm. ¶ 15)  Defendants refused to delete the indemnification provision since Plaintiff had already agreed to indemnify Defendants "for tax liability in connection with [the] settlement." (Heagle Affirm. ¶ 15)  A copy of Defendants' May 25, 2006 letter to Attorney Lim is attached hereto as Exhibit B.  (Heagle Affirm. ¶ 15)  It is important to note that, with these changes, and, with the exception of the deletion of the tax indemnification provision, expressly agreed to by Plaintiff in the Agreement to Settle, the proposed full agreement met all of the conditions set forth by Plaintiff.  (Heagle Affirm. ¶ 15)

On May 30, Attorney Lim called Defendants' counsel and stated that Plaintiff had "since learned" that the settlement monies were taxable and, therefore, Plaintiff was no longer interested in settling the matter for the agreed to amount.  (Heagle Affirm. ¶ 16) Attorney Lim then reiterated that Plaintiff would not indemnify Defendants for tax liability in connection with the settlement monies as she had previously agreed to during the

mediation, and further that Plaintiff would not agree to waive "unknown" claims.  (Heagle Affirm. ¶ 16)  Attorney Lim then stated that she did not consider the matter settled and would not sign a stipulation to dismiss the case as required by the local rules.  (Heagle Affirm. ¶ 16)  Defendants' counsel reiterated Defendants' position that a settlement already had been reached between the parties and Plaintiff's subsequent attempts at avoiding the agreement were futile.  (Heagle Affirm. ¶ 16)

Attorney Lim called Defendants' counsel again on June 13 and indicated that Plaintiff might be willing to settle the matter for additional settlement monies, without the tax indemnification provision, and with a release of only known claims.  (Heagle Affirm. ¶ 17)  Defendants' counsel again informed Attorney Lim that the parties had already reached agreement at the mediation and Defendants would be filing the instant motion to enforce. (Heagle Affirm. ¶ 17)  Attorney Lim has repeatedly tried and continues to try to induce Defendants to add to the agreed upon settlement amount.  (Heagle Affirm. ¶ 18)

## ARGUMENT

### A.     Once Entered Into, a Settlement is a Binding Contract

"A settlement is a contract, and once entered into is binding and conclusive." Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989), *cert. denied*, 111 S. Ct. 177 (1990), *subsequently abrogated on other grounds by* Digital Equipment Corp. v. Desktop Direct, Inc., 114 S. Ct. 1992, 1995, 511 U.S. 863, 867 (U.S. Utah June 6, 1994).  In determining whether a settlement was agreed to, a court looks "first to the plain language of the agreement." Janneh, 887 F.2d at 436 (*citing*, Kohl Indus. Park Co. v. County of Rockland, 710 F.2d 895, 903 (2d Cir. 1983)).

In this Circuit, there is a strong presumption in favor of settlement agreements and such agreements "will not be set aside in the absence of cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident." Interspace Incorp. v. Morris, 650 F. Supp. 107, 110 (S.D.N.Y. 1986).  The "'mutual mistake' defense is properly applied '[w]here a mistake of *both* parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances . . . .'" Rispler v. Sol Spitz Co., Inc., 418 F. Supp. 2d 82, 90 (E.D.N.Y. 2005) (*citing*, New York State Electric & Gas Corp. v. Saranac Power Partners, L.P., 117 F. Supp. 2d 211, 253 n. 79 (N.D.N.Y. 2000)).  A unilateral mistake cannot serve as the basis for avoiding enforcement of an agreement. See Rispler, 418 F. Supp. 2d at 90. Moreover, an agreement will be enforced unless the party seeking avoidance of the terms

00078773;1

7

reached can "'show in no uncertain terms, not only that mistake . . . exists, but exactly what was really agreed upon between the parties.'" <u>Loewenson v. London Market Companies</u>, 351 F.3d 58, 61 - 63 (2d Cir. 2003) (enforcing the agreement reached even though the agreement contained an incorrect calculation methodology since "it cannot be said that a flawless methodology was  . . . intended by the parties") (citations omitted).

Once a settlement of a lawsuit has been reached, the district court has the power to enforce the agreement.  <u>See</u> <u>Meetings & Expositions, Inc. v. Tandy Corp.</u>, 490 F.2d 714, 717 (2d Cir. 1974).  As stated by the Second Circuit, a party's bargained for right to avoid trial by enforcing a settlement agreement:

> . . . implicates our nation's strong judicial and public policies favoring out-of-court settlement.  Litigants, courts, and Congress view settlement as a positive force, indispensable to judicial administration.  Foregoing formal courtroom procedures, including discovery, trial, briefs and arguments, brings substantial benefits to the parties.  The costs of litigation are reduced and crowded dockets are relieved.
>
> We note that Congress has expressed a strong preference for encouraging voluntary settlement of employment discrimination claims in particular.

<u>Janneh</u>, 887 F.2d at 435.

The District Court for the Eastern District of New York has incorporated this presumption in favor of settlement into its local civil rules governing court-annexed mediation.  Specifically, pursuant to local rule of civil procedure 83.11(b)(6), "[i]f [during mediation] settlement is reached, in whole or in part, the agreement, *which shall be binding upon all parties* will be put into writing and counsel will file a stipulation of dismissal or such

00078773;1                                                 8

other document as may be appropriate." E.D.N.Y. R. 83.11(b)(6) (emphasis added).

B.    **The Parties Reached Agreement Regarding the Settlement of this Matter**

During the mediation held on May 19, 2006, the parties negotiated with each other and caucused with the mediator. Initially during the negotiations, the parties focused on reaching a mutually acceptable amount for the settlement. Once the amount was agreed to, the parties negotiated other core terms of the agreement. For example, in exchange for designating certain of the settlement monies as back wages and certain as compensatory damages, Plaintiff agreed to indemnify Defendants as to the tax liability in connection with the settlement monies and acknowledged that Defendants made no representations as to "what is or is not taxable."

Once the core terms were agreed to, the parties reconvened with the mediator and each other. The parties aided in the mediator's reduction of the agreement reached into the written Agreement to Settle. The parties reviewed the Agreement to Settle, with their counsel. At no time did Plaintiff indicate that she did not agree with the terms in the Agreement to Settle. In fact, quite the opposite; Plaintiff signed the Agreement to Settle to indicate her agreement with its terms. The Agreement to Settle, in turn, clearly conveys an intention to settle. Specifically, Plaintiff agreed "to execute a settlement agreement, drafted by the Defendants, the essential terms of which include[d] settlement of the action, and a full release for all Defendants, named and unnamed . . . ." Significantly, three days later, Plaintiff's counsel confirmed via email to the mediator that he could report the case as

settled to this Court.  Pursuant to these facts, it is clear that the parties intended to settle this matter.  See Little v. Greyhound Lines, Inc., 2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005) (finding that the parties intended to settle as evidenced by an agreement reached during mediation and signed by the parties' counsel).

Plaintiff's attempt to avoid the settlement springs from her subsequent realization that the settlement monies would be taxable.  Plaintiff's counsel confirmed as much and indicated that Plaintiff "might" be willing to settle for more money (among other considerations).  Plaintiff's after-the-fact analysis of the settlement amount is untimely and irrelevant.  Having second thoughts about an agreement does not void an agreement already reached.  "When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." U.S. v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994) (refusing to set aside a consent decree in a civil matter since it was the product of a binding settlement reached between the parties); see also, Interspace, 650 F. Supp. at 109 (finding a settlement to be binding since "[t]he parties negotiated and agreed upon a settlement and memorialized it in a writing which all parties signed").  Plaintiff's avoidance of the settlement she agreed to simply because she has since had a change of heart would run contrary to the courts' presumption in favor of settlement, general contract principles and the law of this Circuit. Thus, the agreement reached between Plaintiff and the Defendants is binding and Defendants are entitled to its enforcement.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to grant the

instant Motion to Enforce the Settlement Agreement, attorneys fees, costs and such other

relief as the Court deems just and proper.


Dated:  New York, New York
        June 20, 2006

                        KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.


                        By:     _____
                                Jane B. Jacobs (JJ-2925)
                                Khristan A. Heagle (KH-0210)
                                ATTORNEYS FOR DEFENDANTS
                                485 Madison Avenue
                                New York, New York 10022

00078773;1                          11